UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY ANN GOODWILL,<br><br>                    Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Case No. 1:22-cv-01017-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 14). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

Plaintiff presents the following issues:

1. The ALJ's Step Four determination is unsupported by substantial evidence, because the RFC precludes Plaintiff's ability to return to her past relevant work, a composite job, as actually performed.

2. The ALJ erred by rejecting the opinions of Plaintiff's examining and treating physicians without proper consideration of the supportability and consistency of the opinions with the record.

1

(ECF No. 14, p. 3).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

# I. ANALYSIS

## A. Past Relevant Work

Plaintiff challenges the ALJ's step four finding that she was "capable of performing past relevant work as an administrative clerk and warehouse manager, as generally performed in the national economy." (A.R. 29). She argues that the ALJ erred "because she discounted evidence establishing that Plaintiff's past work was performed as composite jobs at the medium exertional level." (ECF No. 14, p. 13). And if her jobs were composites requiring medium work, she would not be able to perform them based on the following RFC limiting her to light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps/stairs but never ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can frequently reach to shoulder height with the right upper extremity and occasionally reach above shoulder height with the right upper extremity. She can push/pull a maximum of ten pounds with the upper extremities. She can frequently handle/finger bilaterally. She must alternate between sitting and standing by sitting for fifteen minutes after every forty-five minutes of standing, while remaining on tasks. She cannot walk over uneven surfaces. She must avoid unprotected heights and workplace hazards. She cannot work with vibrations. She must avoid concentrated exposure to cold temperatures.

(A.R. 23).

Defendant argues that Plaintiff's "past jobs were not composite positions, as Plaintiff's main duties in each role aligned with the requirements of an administrative clerk and warehouse manager," and those jobs are generally performed in the national economy at the light exertional level, making her able to perform them based on the above RFC. (ECF No. 16, pp. 4, 9).

"At step four, claimants have the burden of showing that they can no longer perform their past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e) and 416.920(e)). "A claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy." *Lewis v.*

1  *Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). The ALJ's decision regarding a claimant's past
2  relevant work must be supported by substantial evidence, which "is such relevant evidence as a
3  reasonable mind might accept as adequate to support a conclusion" when considering "the record
4  as a whole." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993) (per curiam).

5         The Dictionary of Occupation Titles (DOT), which describes duties commonly performed
6  in various jobs, is "the best source for how a job is generally performed." *Pinto*, 249 F.3d at 845.
7  However, an ALJ must bear in mind that "[e]very occupation consists of a myriad of tasks, each
8  involving different degrees of physical exertion." *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th
9  Cir. 1985). And some occupations have tasks that do not neatly align with the DOT's description
10 for any single job. Accordingly, under the Social Security Administration Program Operations
11 Manual System (POMS), an ALJ considers whether a plaintiff's work is a "composite job."
12 POMS DI 25005.020. Work constitutes a compositive job when it has "significant elements of
13 two or more occupations and as such, ha[s] no counterpart in the DOT." *Id.* More specifically,
14 work "may be a composite job if it takes multiple DOT occupations to locate the main duties of
15 the [past relevant work] as described by the claimant." *Id.*

16        The Ninth Circuit has not established a bright-line rule for what constitutes "significant
17 elements" or "main duties" of work so as to find a composite job. However, district courts
18 generally consider the "fundamental nature" of the work at issue, focusing on how much time a
19 plaintiff spends doing the tasks claimed to support a composite-job finding. *Dora L. v. Kijakazi*,
20 No. 2:20-CV-01493-SP, 2021 WL 4502722, at *14 (C.D. Cal. Sept. 30, 2021) (citing *Stacy v.*
21 *Colvin*, 825 F.3d 563, 570 (9th Cir. 2016)); *Elias v. Comm'r of Soc. Sec. Admin.*, No. CV 18-
22 00200-TUC-RCC (DTF), 2019 WL 4296779, at *2 (D. Ariz. Sept. 11, 2019) ("Here, the work
23 had a comparable job in the national economy because the fundamental nature of the work
24 resembled that of a data entry clerk."); *Douglas v. Colvin*, No. 1:15-CV-03119-JTR, 2016 WL
25 11788749, at *7 (E.D. Wash. Aug. 15, 2016) ("[S]hould the ALJ consider the work performed at
26 IBM for any purpose, the ALJ is instructed to take additional testimony regarding the
27 proportionality of each task performed and determine whether or not one task was performed at a
28 high enough rate that the other task was not sufficient to change the fundamental nature of the

work."). Notably, "[a] particular job does not become composite merely because, as actually performed, the particular job included tasks not generally performed in such a job." *Laurie A. M. v. Kijakazi*, No. ED CV 21-1958-ODW(E), 2022 WL 2610246, at *4 (C.D. Cal. July 8, 2022).

With these standards in mind, the parties' dispute whether Plaintiff's past occupations should have been considered composite jobs. At the hearing, Plaintiff first testified that she worked as an administrative clerk,[1] which she described as requiring the following tasks: "Yeah, most of it was customer service, doing [paperwork,] I would occasionally get orders together, I drove a forklift and loaded the truck every now and then, but it was mainly customer service with the phones and lots and lots of paperwork." (A.R. 44). When asked whether she was "primarily sitting" during her work, Plaintiff replied, "Yeah, I would say about 80% of it, yes." (A.R. 44).

The vocational expert (VE) stated that this work would be classified as an administrative clerk under the DOT, which is considered light work as generally performed, but would be medium work as Plaintiff actually performed it. (A.R. 57). The DOT describes the duties for this job as follows:

> Compiles and maintains records of business transactions and office activities of establishment, performing variety of following or similar clerical duties and utilizing knowledge of systems or procedures: Copies data and compiles records and reports. Tabulates and posts data in record books. Computes wages, taxes, premiums, commissions, and payments. Records orders for merchandise or service. Gives information to and interviews customers, claimants, employees, and sales personnel. Receives, counts, and pays out cash. Prepares, issues, and sends out receipts, bills, policies, invoices, statements, and checks. Prepares stock inventory. Adjusts complaints. Operates office machines, such as typewriter, adding, calculating, and duplicating machines. Opens and routes incoming mail, answers correspondence, and prepares outgoing mail. May take dictation. May greet and assist visitors. May prepare payroll. May keep books. May purchase supplies. May operate computer terminal to input and retrieve data.

DOT 219.362-010 Administrative Clerk, 1991 WL 671953.

When questioned whether Plaintiff's non-administrative duties—*e.g.*, driving a forklift—would make this a composite job, the VE testified that it would not be a composite job based on Plaintiff's testimony that the job involved "80% sitting and 20% [other duties]." (A.R. 60). The

---

[1] Plaintiff uses the term "administrative assistant." (A.R. 43). The Court uses the term "administrative clerk" for consistency.

1  ALJ agreed that it was not a compositive job and concluded that, with Plaintiff being capable of
2  performing light work, she could perform her past work as an administrative clerk as generally
3  performed in the national economy. (A.R 15, 30).

4  Plaintiff argues that "the duties of forklift driver, loading trucks, helping customers load
5  orders, and getting orders together . . . were job duties required in the performance of her work,
6  and they were performed regularly as part of her job duties" and thus "Plaintiff's past relevant
7  work did not conform to a single occupation in the Dictionary of Occupational Titles, but
8  involved significant aspects of two separate occupations to describe the main duties of her past
9  relevant work, and therefore must be considered a composite job with a medium exertional
10 capacity." (ECF No. 14, p. 15-16). Defendant argues that "Plaintiff's duties driving a forklift and
11 loading trucks were not main duties or the majority of her job in this role" and thus her "past
12 work was properly classified as the non-composite position of administrative clerk under DOT
13 code 219.362-010." (ECF No. 16, p. 7). The Court agrees with Defendant.

14 Importantly, according to Plaintiff herself, "most of [her administrative clerk job] was
15 customer service," with her sitting about 80% of the day and only "occasionally" performing non-
16 administrative duties like driving a forklift. (A.R. 44). Accordingly, the fundamental nature of
17 Plaintiff's work was administrative, and thus the ALJ's decision to designate Plaintiff's past work
18 as "administrative clerk" without finding a composite job is supported by substantial evidence.[2]
19 *See Stacy*, 825 F.3d at 570 ("When Stacy performed that job, he engaged in supervisory duties
20 70-75 percent of the time. The fact that his employer also required him to occasionally do other,
21 non-supervisory tasks does not change the fundamental nature of his work."); *Elias*, 2019 WL
22 4296779, at *2 ("The data entry work, being 70%, was the fundamental nature of the work. So,
23 there is substantial evidence that the job listed by the VE and that used in by the ALJ were
24 equivalent as generally performed."); *Jim Pan Su v. Berryhill*, No. 16-CV-06486-EDL, 2017 WL
25 8294290, at *11 (N.D. Cal. Dec. 4, 2017) (finding substantial evidence to support ALJ's decision
26 that a plaintiff did not have a composite job where the plaintiff testified that her "main job" was

---

[2] Given this conclusion, the Court need not also evaluate whether Plaintiff's other position—warehouse manager—was a composite job.

consistent with her past relevant work despite performing other duties).

**B.     Medical Opinions**

Plaintiff next argues that the ALJ failed to properly consider the supportability and consistency factors in evaluating the opinions of Dr. Fabella, P.A. Contreras,[3] and Dr. Garcia. (ECF No. 14, p. 18).

Because Plaintiff applied for benefits in 2020, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (AR 210). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial

---

[3] Plaintiff refers to Contreras as Dr. Contreras. However, the record indicates that Contreras was a physician assistant. (A.R. 517).

evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

### 1. Dr. Fabella

Dr. Fabella examined Plaintiff and prepared a report opining on Plaintiff's physical limitations. (A.R. 485-490). In finding Dr. Fabella opinion mostly persuasive, the ALJ stated as follows:

> In August 2020, Dr. Emmanuel Fabella, a consultative examiner, indicated that the claimant can lift/carry 20 pounds occasionally and 10 pounds frequently with the left arm (Exhibit 8F). He noted that the claimant can lift/carry 10 pounds occasionally and *less than 10 pounds frequently with the right arm. She can stand/walk for 4 or 6 hours out of 8 hours a day.* The claimant can climb, balance, kneel, and crawl occasionally. She is unable to walk on uneven terrain, climb ladders, and work at heights secondary to right hip joint pain.
>
> . . . .
>
> Dr[]. Fabella's . . .opinions are consistent with the overall evidence in the record. For instance, on exams, the claimant often demonstrated the ability to stand and walk without difficulty; no assistive device; generally normal strength in her upper extremities; normal sensation; no neurological deficits; intact balancing; no joint deformities; no effusions; no warmth; no swelling; no crepitus in the extremities; intact elbow range of motion; intact wrists and finger ranges of motion; and negative bilateral shoulder impingement (Exhibit 8F/5; 5F/14, 15; 9F/21; 18F). The record also fails to reveal that the claimant had deficits in handling/fingering (Exhibit 8F; 1F-18F). Dr. Fabella's opinion is supported by his exam. For instance, during his exam, the claimant demonstrated reduced ranges of motion of her shoulders, but she also had normal upper extremity strength, normal bulk, normal tone, no atrophy, and no fine or gross manipulation deficits (Exhibit 8F). *However, the undersigned does not find that the claimant would be limited to lift/carry ten pounds with the right arm or that she would be limited to stand/walk for four hours. The undersigned does not find this portion of his opinion persuasive.*

(A.R. 26-27) (emphasis added).

Plaintiff argues that the ALJ erred by finding Dr. Fabella's opinion mostly persuasive and failing to explain why she discounted the more restrictive lift/carry and stand/walk limitations. (ECF No. 14, pp. 19-20). Defendant concedes that "the ALJ did not explicitly explain her reasons for discounting these portions of Dr. Fabella's opinion" but nonetheless her "reasons can be easily inferred from the full context of the ALJ's discussion of Dr. Fabella's opinion alongside the prior administrative medical findings of Drs. Jackson and Fast." (ECF No. 16, p. 13). Specifically, Defendant notes that the ALJ addressed all three opinions contemporaneously in a section regarding the opinions the ALJ found persuasive.

> In contrast to Dr. Fabella, Drs. Jackson and Fast assessed that Plaintiff could stand and walk for at least six hours in an eight-hour workday, and they did not restrict her to carrying no more than 10 pounds with her right arm (AR 77 [Dr. Jackson], 93 [Dr. Fast]). The ALJ reasonably concluded that the findings of Drs. Jackson and Fast regarding Plaintiff's exertional abilities were more consistent with the record overall, including Plaintiff's largely normal examination findings indicating normal strength and sensation, intact balancing, and demonstrated ability to walk and stand without difficulty (AR 27, citing AR 429-30, 488, 501, 511).

(*Id.* at 13-14).

The Court agrees with Plaintiff that the ALJ failed to provided sufficient explanation on this point. "[E]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence," which requires the ALJ to "articulate" how persuasive each opinion is. *Woods*, 32 F.4th at 792. But here, the ALJ provided no explanation or articulation.

While Defendant contends that the ALJ's "reasons can be easily inferred" based on the discussion of other opinions, the Court disagrees. True, the ALJ must have found the relevant exertional abilities opined by Doctors Jackson and Fast more consistent and supported by the record, or else she would not have adopted them. But the mere fact that an ALJ finds one opinion more persuasive than another does not substitute for an explanation as to why another doctor's opinion is rejected. Notably, the ALJ did not compare the opinions of Doctors Jackson, Fast, and Fabella so as to explain whose limitations she believed were better supported and more

consistent.

Given the ALJ's failure to explain her rejection of Dr. Fabella's more restrictive lift/carry and stand/walk opinions in terms of the supportability and consistency factors, the Court concludes that the ALJ erred. *See Childress v. Kijakazi*, No. 1:20-CV-01803-BAM, 2022 WL 1567246, at *7 (E.D. Cal. May 18, 2022) ("Because the ALJ did not explain why he found the opinion of Dr. Rivera and Ms. Bourelle unsupported, he erred in discrediting it.").

As for remedy, Plaintiff argues that this matter should be remanded for further administrative proceedings and does not request an award of benefits. (ECF No. 14, p. 20). The Court concludes that a remand for further proceedings is appropriate so that the ALJ can properly evaluate Dr. Fabella's opinion in the first instance.

### 2. PA Contreras and Dr. Garcia

PA Contreras and Dr. Garcia each treated Plaintiff at Family Wellness Center and Walk-In Clinic and each prepared a physical medical source statement opining that Plaintiff had very restrictive physical limitations. (A.R. 513-16, 556-59). In deeming their opinions not persuasive, the ALJ stated as follows:

> In January 2021, Mr. Juan Contreras, PA, indicated that can walk 1-2 blocks, sit for 30 minutes at a time; stand for 15 minutes at a time; can sit, stand less than 2 hours total during an 8-hour workday; needs a sit/stand option; and needs time to walk around during a workday – for 1 minute every 15 minutes (Exhibit 10F). He noted that the claimant needs to elevate her legs above heart level while sitting 40% of the time spent sitting. She needs a hand-held device for imbalance, insecurity, pain, dizziness, and weakness. She can rarely lift/carry less than 10 pounds, can never lift/carry 10 or more pounds. She needs lie down and rest quietly for more than 15 minutes after every 2 hours of work. She does not have significant limitations in reaching, handling, or fingering.
>
> In June 2021, Dr. Raynado Garcia, indicated that the claimant can walk 1-2 blocks (13F; 14F). She can sit for 20 minutes at a time, stand for 15 minutes at a time. She can sit, stand less than 2 hours total during an 8-hour workday. She needs a sit/stand option, needs time to walk around during a workday – for 5-10 minutes every 30 minutes. She needs to elevate her legs above heart level while sitting 40% of the time spent sitting. She does not need a hand-held device. She can rarely lift/carry less than 10 pounds, can never lift/carry 10 or more pounds. She can rarely stoop, crouch, squat; can never climb stairs or ladders. She does not have significant limitations in reaching, handling, or fingering.

9

> Dr. Garcia's and Mr. Contreras's opinions are not consistent with the overall evidence in the record. For instance, on exams, the claimant often demonstrated the ability to stand and walk without difficulty; no assistive device; generally normal strength in her upper extremities; normal sensation; no neurological deficits; intact balancing; no joint deformities; no effusions; no warmth; no swelling; no crepitus in the extremities; intact elbow range of motion; intact wrists and finger range of motion; negative bilateral shoulder impingement (Exhibit 8F/5; 5F/14, 15; 9F/21; 18F). The record also fails to reveal that the claimant had deficits in handling/fingering (Exhibit 8F; 1F-18F). Dr. Garcia's opinion is not supported by his exams. For example, during his exams, there are generally no deficits noted and the exams generally reflect essentially normal physical exam findings (Exhibit 5F; 7F; 18F). Mr. Contreras's opinion is not supported by his exams. During his exams, there are generally no deficits noted and the exams generally reflect essentially normal physical exam findings (Exhibit 5F; 7F; 18F). Thus, the undersigned does not find these opinions persuasive.

(A.R. 27-28).

Plaintiff argues that the ALJ's conclusion is not supported by substantial evidence because the ALJ "cherry-picked instances of normal physical examinations" to support the RFC while ignoring evidence favorable to Plaintiff. (ECF No. 14, p. 22). Defendant counters that the ALJ properly characterized the record as a whole and that "Plaintiff herself cherry picks evidence in the record in an attempt to re-cast the evidence in her favor." (ECF No. 16, p. 16).

Upon review of the record and the parties' arguments, the Court agrees with Defendant. True, an ALJ is not permitted to "selectively" rely on evidence to find a claimant not disabled, while "ignor[ing]" evidence favorable to the claimant. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). However, this is not a case where the ALJ impermissibly "cherrypicked" the record.

As an initial matter, the ALJ noted findings favorable to Plaintiff in recounting her treatment, *e.g.*, that "[i]n June 2020, a shoulder MRI revealed type II acromion, moderate AC degenerative joint disease, and low-grade partial rotator cuff tear (Exhibit 9F/16)." (A.R. 25). However, the ALJ concluded that "[d]espite [certain] deficits on diagnostic tests, [plaintiff] has also demonstrated generally benign exam findings." Pertinent here, the ALJ observed that the examinations conducted by PA Contreras and Dr. Garcia "generally reflect essentially normal physical exam findings." (A.R. 28). The records at issue provide a checkbox format to mark

positive findings on examination and a space to write any relevant observations. However, a significant number of records list no, or few, findings and observations that would support the limitations opined by PA Contreras and Dr. Garcia, and instead tend to show generally normal findings. (*See, e.g.*, A.R. 425, 428, 459, 466, 481, 616, 627, 644, 657, 660). While Plaintiff argues that certain records could support a different conclusion as to the evidence, this at most amounts to another "rational interpretation," meaning that "the decision of the ALJ must be upheld. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).

Accordingly, the Court concludes that the ALJ's review of the opinions of PA Contreras and Dr. Garcia was supported by substantial evidence after consideration of the supportability and consistency factors.

## II.    CONCLUSION AND ORDER

For the reasons given, the decision of the Commissioner of the Social Security Administration is REVERSED, in part, and REMANDED. On remand, the ALJ is directed to review Dr. Fabella's relevant lift/carry and stand/walk opinions, and if the ALJ continues to reject them, the ALJ shall provide an explanation supported by substantial evidence after consideration of the supportability and consistency factors.

The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:    **May 22, 2023**                                 /s/ *Erica P. Grosjean*
                                                                    UNITED STATES MAGISTRATE JUDGE